UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, et al.,                         Case No. 06-13351

       Plaintiffs,                         Honorable Nancy G. Edmunds

v.

KIDNEY REPLACEMENT SERVICES,
P.C.,

       Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22]**

Pending before this Court is Defendant Kidney Replacement Services, P.C.'s motion for summary judgment, filed on February 27, 2007. Plaintiff Equal Employment Opportunity Commission ("EEOC") originally filed this case alleging unlawful retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-3(a), 2000e-5(f)(1) and 2000e-5(f)(3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. On November 20, 2006, the Court granted Plaintiff Kristine Williams' motion to intervene, and on January 4, 2007 the Court consolidated another pending case, brought by Plaintiff Gail Hall, with the instant case. Williams and Hall are referred to collectively as "the Individual Plaintiffs."

In support of its motion for summary judgment, Defendant argues that the Individual Plaintiffs did not engage in a protected activity and, thus, Title VII does not prohibit Defendant's termination of their employment. For the reasons set forth below,

the Court DENIES Defendant Kidney Replacement Services P.C.'s motion for summary judgment.

**I. FACTS**

Plaintiff Kristine Williams was a dialysis technician and Plaintiff Gail Hall was a registered nurse who worked for Defendant providing kidney dialysis treatment to prisoners incarcerated at the Southern Michigan Correctional Facility in Jackson, Michigan.[1] (EEOC's Resp. at 1.) At that time, this work represented Defendant's sole source of business. (Def.'s Mot. for Summ. J. (hereinafter, "Def.'s Mot.") at 7.)

Dialysis treatments last upwards of three hours, so the prisoners typically watch television for entertainment during their treatment. One of the channels that the prisoners like to watch is Black Entertainment Television ("BET"). (*Id.*) The Individual Plaintiffs claim that inmates cannot use the television remote controls, as such devices are considered contraband by prison authorities. Rather, the prisoners must request that Defendant's employees change the channel for them. (Indiv. Pls.' Resp. at 2.) Defendant replies, however, that prisoners can change channels themselves–they just cannot remove remote controls from the dialysis treatment room. (Def.'s Reply at 2.) The Michigan Department of Corrections ("MDOC") determines what channels are available for viewing within its prisons, and Defendant asserts that it had no control over this decision during the period at issue here. (Def.'s Mot. at 7.)

---

[1] Defendant contracted to perform this work through an agreement between it a third party, Correctional Medical Services, Inc. ("CMS"). (Def.'s Mot. for Summ. J. at 7.) While CMS had the direct contractual relationship with the Michigan Department of Corrections, this fact appears to be irrelevant for purposes of addressing the instant motion.

The Individual Plaintiffs' direct supervisor was Alex Glover, and he was a head nurse who also worked for Defendant. On three occasions, the Individual Plaintiffs complained to Glover about the actions of another one of Defendant's employees, Devin Middlebrook. (EEOC's Resp. at 2.) Devin is the brother of Defendant's owner, Dr. Deon Middlebrook. (Indiv. Pls.' Resp. at 2.) Specifically, the Individual Plaintiffs complained about Devin switching the television channel to BET when the network was broadcasting stand-up comedy routines on sexually-suggestive topics. (EEOC's Resp. at 2.) Glover confronted Devin with the Individual Plaintiffs' complaints but this did not resolve the problem, as the discussions ended with shouting between Glover and Devin, and Devin would just switch the channel to these programs after Glover left work for the evening. (*Id.*) The Individual Plaintiffs allege that Glover informed Dr. Middlebrook of the issue, but that Dr. Middlebrook considered this a "'black-white issue' over the fact that the programming was on [BET], and was not a sexual harassment problem."[2] (*Id.*) Defendant contends that Dr. Middlebrook told Glover to change the television channel if there were complaints. (Def.'s Reply at 2.)

On the night of December 29, 2004, Devin turned the channel to BET where comedian David Chappelle was performing a comedy routine about oral sex where he discussed "eating pussy" and "going down on an Oriental woman and coming up with a fortune cookie." (*Id.* at 3; Hall Aff., EEOC's Resp., Ex. B ¶ 28.) On January 3, 2005, the Individual Plaintiffs informed Glover that they were taking the issue to the MDOC's harassment coordinator. (Indiv. Pls.' Resp. at 3.) They each filed a formal complaint

---

[2]Dr. Middlebrook is black, (Indiv. Pls.' Resp. at 2) and, presumably, the Individual Plaintiffs are white.

with this person on January 7, (EEOC's Resp., Exs. C and D) and Dr. Middlebrook learned of the complaints on that date. He then terminated the Individual Plaintiffs on January 8. Glover informed the Individual Plaintiffs of their termination, explaining that their complaints to the MDOC had embarrassed Dr. Middlebrook and Defendant. (Williams Aff., EEOC's Resp., Ex. A ¶ 48; Hall Aff. ¶ 36.) Dr. Middlebrook's affidavit states his belief that the Individual Plaintiffs' action of taking this complaint directly to the MDOC "jeopardized our business," and he was upset "at the failure of our employees to bring their concerns to my attention, even though they had the opportunity to do so, . . . and especially that they [complained about] a segment of a television program, something which we do not control." (Dr. Middlebrook Aff., Def.'s Mot., Ex. B ¶ 8.)

## II. STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. ANALYSIS

#### A. Shifting Title VII Burdens of Proof

The parties' respective burdens of production in a Title VII case depend on the level of evidence that the plaintiff asserts to support the underlying claim. If the plaintiff raises direct evidence of prohibited conduct, "the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.*

If, on the other hand, the plaintiff's claim only relies upon circumstantial evidence of unlawful actions, the plaintiff must first state a prima facie case of Title VII retaliation, which requires:

> (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his [or her] civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff;

>   and (4) that there was a causal connection between the protected activity
>   and the adverse employment action.

*Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 877 (6th 1991).  Once the plaintiff asserts a prima facie case, the burden of production shifts back to the defendant to state a legitimate, non-retaliatory justification for the adverse employment action under the familiar burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1972).  *Id.*  If the defendant meets this requirement, the burden of production shifts back to the plaintiff to bring evidence that the defendant's asserted justification was pretext for unlawful conduct.

Regardless of whether a plaintiff supports her Title VII claim with direct or circumstantial evidence, she must have engaged in a protected activity of some sort prior to the defendant's allegedly wrongful employment action.  *Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 748-49 (6th Cir. 1986).  In fact, this is the only element of Plaintiffs' claim that Defendant argues is not present here.  Thus, the Court will address Defendant's contentions that the Individual Plaintiffs' MDOC complaints were not a protected activity under Title VII.

**B.  The Individual Plaintiffs Engaged in a Protected Activity**

Before addressing the root issue of whether the Individual Plaintiffs engaged in a protected activity prior to their terminations, it is necessary to distinguish between the two types of protected individuals under Title VII: (1) an employee that "opposes" an unlawful employment practice, and (2) an employee that "participates" in some facet of legally enforcing Title VII.  The distinction arises from the two separate clauses of 42 U.S.C. § 2000e-3(a), which provide, in relevant part, that:

6

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has [1.] *opposed* any practice made an unlawful employment practice by this subchapter, or [2.] because he has made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added).

The Sixth Circuit has noted that "federal courts have generally granted less protection for opposition [to an unlawful employment practice] than for participation in enforcement proceedings." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989). While a "[participating] employee is generally protected from retaliation," courts that preside over a case involving an employee who opposed unlawful practices "are required 'to balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel . . . . The requirements of the job and the tolerable limits of conduct in a particular setting must be explored.'" *Id.* (quoting *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 231 (1st Cir. 1976)). Thus, "[a]n [opposing] employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Id.* Such behavior gives an employer a legitimate, non-discriminatory reason for the adverse employment action.

This is not to say that an employee's actions opposing perceived Title VII violations need to be undertaken in a perfect manner or that the alleged employment practices must be later found to be unlawful in order for the employee's complaints to constitute a protected activity. To the contrary, an employee's actions must simply be

7

reasonable under the circumstances, and the employee must have been acting under a good faith belief that the alleged practices were illegal. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000).

In determining whether a plaintiff's case falls under the opposition clause or the participation clause of 42 U.S.C. § 2000e-3(a), "the language of the statute should be read literally, and, therefore, the instigation of proceedings leading to the filing of a complaint or a charge . . . is a prerequisite to protection under the participation clause." *Id.* at 1313. Here, the Individual Plaintiffs filed formal complaints with internal MDOC employees prior to the time of their terminations, but had not yet begun any proceedings with the EEOC that would have led to the instant lawsuit. This indicates that the Individual Plaintiffs' actions fall under the opposition clause, and Plaintiffs do not dispute this conclusion.

Defendant argues that the Individual Plaintiffs did not engage in a protected activity because (1) complaining to Defendant's customer constituted a lack of loyalty to their employer, and (2) at least one court has found that complaints to customers do not constitute a protected activity since such an action is not reasonable under the circumstances. First of all, the Court does not quarrel with the general assertion that an employer may legitimately demand that its employees exhibit "loyalty, cooperation and a generally productive work environment." *Rollins v. Florida Dept. of Law Enforcement*, 868 F.2d 397, 401 (11th Cir. 1989). In that case, the Eleventh Circuit dismissed a plaintiff's claims of retaliation under Title VII because of how she went about exercising her complaints of racial discrimination. Specifically, the *Rollins* plaintiff "had earned the reputation as a disruptive complainer who antagonized her supervisors and colleagues

and impaired the morale of her unit." *Id.* Furthermore, "the sheer number and frequency of Rollins' complaints of discrimination, most of which were plainly spurious, was overwhelming." *Id.* at 399.

The instant dispute is distinguishable from the facts in *Rollins* that led to that court's holding, however. It is true that the *Rollins* plaintiff was known to go outside the established chain of command in reporting her complaints, as Defendants allege the Individual Plaintiffs did here, but the Individual Plaintiffs made a relatively limited number of complaints to Glover and the MDOC, and these complaints could hardly be described as disruptive, antagonistic or spurious.[3] The potential similarity of the Individual Plaintiffs going slightly outside an internal complaint procedure once speaking to Glover failed to remedy the situation is insufficient on its own for this Court to reach the same result as the Eleventh Circuit did in *Rollins*.

Defendants also cite *Fox v. Eagle Distrib. Co., Inc.*, No. 3:05-cv-476, 2006 WL 2927441 at *3 (E.D. Tenn. Oct. 11, 2006), for the proposition that complaining to an employer's customer is not a protected activity, but that case is factually distinguishable as well. There, the plaintiff worked for a beer distributor and was terminated for allegedly complaining to the manager of a store within his employer's territory that the defendant's "upper management was 'out to get him' and that he had a 'ten million dollar lawsuit' against the company that 'ought to get their attention.'" *Id.* In dismissing the plaintiff's retaliation claims under the Age Discrimination in Employment Act, the *Fox*

---

[3]Furthermore, the Individual Plaintiffs dispute that they ever received copies of Defendant's employee manuals that described its internal complaint process. (Williams Dep. ¶ 14; Hall Dep. ¶ 13.)

9

court held that a protected activity "does not include statements to customers which denigrate the company and potentially harm its reputation, even if the statements are related to activities which are protected." *Id.* at *8.

Here, the Individual Plaintiffs' complaints to the MDOC focused on the television programs that they found offensive and did not pertain to general matters about Defendant's business operations or its ability to adequately provide dialysis services. (Williams MDOC Compl., EEOC's Resp., Ex. C; Hall MDOC Compl., EEOC's Resp., Ex. D.)  To be sure, any complaints about a company to one of its customers could be seen as harmful to the first entity's reputation, but nothing in *Fox* indicates that that court intended its reasoning to extend to a complete bar against taking complaints to a company further up the chain in a contractual relationship like the one present here.

*Fox* also involved a much different situation–one where the plaintiff took his complaints to a completely unrelated third party store manager who presumably had no ability to control the defendant's actions towards the plaintiff.  In the instant case, however, the MDOC most certainly exercised a greater degree of control over the working conditions within its prison than the defendant's arms-length customer could have exercised in *Fox*.  Thus, the Individual Plaintiffs' complaint to the MDOC does not reach the level of unreasonableness that the *Fox* plaintiff's random complaint to a customer did due to the fact that the Individual Plaintiffs could reasonably think that MDOC officials might be able to address the issue.  Furthermore, the Individual Plaintiffs claim that they first tried to resolve these complaints internally with Glover, and it was only after these attempts proved unsuccessful that they took the additional step of complaining directly to Defendant's end customer.  Under such a factual scenario, the

Court declines to adopt Defendant's assertion that "Title VII does not give [the Individual Plaintiffs] the right to take their protest to the Prison or the [MDOC]." (Def.'s Mot. at 12.)

In fact, at least one other court has found that a complaint to an employer's customer was not unreasonable under the circumstances. In *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008 (9th Cir. 1983), the plaintiffs were employees that had fought their employer over alleged racially discriminatory employment practices for a number of years. When the Los Angeles Unified School District, one of the defendant's largest customers, announced that it would provide the defendant funding for a local outreach program, the plaintiffs perceived this as an award for the defendant promoting affirmative action. Upset because of the past disputes with the defendant over its employment practices, the plaintiffs sent a letter to the school district and the defendant explaining their displeasure. The defendant then terminated those employees that signed the letter due to their disloyalty and the threat that the letter posed to the defendant's ability to maintain one of its largest customer relationships. *Id.* at 1009-11. The *Crown Zellerbach* court noted that all actions of opposition to an employer's practices constitute some level of disloyalty, but that in order to reach the level of being unreasonable, such opposition must "significantly disrupt[] the workplace" or "directly hinder[]" the plaintiff's ability to perform his or her job. *Id.* at 1014-15. For that reason, the *Crown Zellerbach* plaintiffs stated a valid Title VII claim despite the fact that their opposition involved a complaint to one of their employer's primary customers.

Defendant argues that a subsequent Ninth Circuit case, *Unt v. Aerospace Corp.*, 765 F.2d 1440 (9th Cir. 1985), and the Sixth Circuit decision in *Booker v. Brown & Williamson*, 879 F.2d 1304, are more appropriate here. *Booker* is inapplicable to the

particular point at issue in this case, however, as that court found that the plaintiff did not state a prima facie case because his conduct did not rise to the level of opposition required for the statute to apply. 879 F.2d at 1313. That court never reached the question of whether the plaintiff's actions were reasonable under the circumstances. *Unt* is similarly inapplicable, because that court assumed that the plaintiff stated a valid prima facie case, but found that he failed to rebut the employer's legitimate, non-discriminatory justification for his termination–not the stage of analysis that is at bar in this case. 765 F.2d at 1446.

Based on the preceding discussion, the Individual Plaintiffs' MDOC complaints were not unreasonable under the circumstances. Accordingly, this Court concludes that the Individual Plaintiffs engaged in a protected activity, so this prong of a prima facie case is met here.[4]

### C. Plaintiffs' Allegations Involve Defendant's Employment Practice

Defendants also argue that Plaintiffs have not stated a viable Title VII claim because the MDOC, and not Defendant, makes all decisions about what channels are available to inmates, so the complaints did not address one of Defendant's employment practices. Aside from the fact that this portion of Defendant's brief is unsupported by any legal citations, it also fails on substantive grounds. Although the Individual Plaintiffs' written complaints to the MDOC requested that channels broadcasting offensive

---

[4] Defendant makes much of the fact that the MDOC was its only customer at the time of the Individual Plaintiffs' complaints, apparently arguing that this factor makes the complaints unreasonable. Such a position is illogical, as it would effectively immunize any employer with only one customer from liability under Title VII, and nothing in the statute indicates that Congress intended such a result.

programming not be allowed in the dialysis treatment room, Defendant's position disregards the fact that the heart of Plaintiffs' allegations concerns Devin Middlebrook turning the channel to television programs that the Individual Plaintiffs found offensive. While it is true that the MDOC could remedy the situation by removing BET from its list of available channels, a reasonable alternative solution would have been for Defendant to address the root cause of the problem, which was Devin Middlebrook's alleged conduct.  Because Plaintiffs' claims address this latter avenue for resolution, Defendant's argument that Plaintiffs' claim does not involve one of its employment practices is without merit.

### D.  Plaintiffs' Complaint Involves a Hostile Work Environment

Lastly, Defendants assert that the offensive programming does not constitute a hostile work environment because employees who work in prisons should expect that they would be subject to certain inmate behaviors that might otherwise constitute unlawful sexual harassment in a more traditional work setting.  *See Slayton v. Ohio Dept. of Youth Servs.*, 206 F.3d 669 (6th Cir. 2000); *Powell v. Morris*, 37 F. Supp. 2d 1011 (S.D. Ohio 1999).

Specifically, the Sixth Circuit has stated that:

> inmate conduct, without more, is an insufficient predicate for a hostile environment claim. Prisoners, by definition, have breached prevailing societal norms in fundamentally corrosive ways. By choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior.

*Slayton*, 206 F.3d at 677-78 (internal citations omitted).  Neither case supports Defendant's position, however, as the *Slayton* court upheld a jury verdict for the plaintiff partially because she alleged that a co-worker, "with the tacit approval of the prison,

engaged in conduct that created a hostile environment." *Id.* at 678. Plaintiffs here also challenge the conduct of one of Defendant's employees, Devin Middlebrook, and not mere prisoner behavior, so *Slayton* actually benefits Plaintiffs' argument on this issue rather than Defendant's. The relevant portion of *Powell* dealt solely with inmate-related conduct, so that case is also factually distinct from the one at bar. Thus, Defendant's argument that Plaintiffs fail to establish a hostile work environment is unavailing.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Defendant's motion for summary judgment is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: April 25, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 25, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer